ABEL S. SMALL, complainant below, appellant, *v.* WINLOCK H. COLLINS, defendant below, respondent.

### And

WINLOCK H. COLLINS, complainant below, appellant, *v.* ABEL S. SMALL, defendant below, respondent.

Although a land agent in negotiating a contract for the sale of land between a vendor and purchaser is the agent of the vendor, he may become the agent of the purchaser in paying for it, if money be placed by him in his hands for that purpose, and the facts and circumstances proved in the case satisfactorily show it.

If in a suit in chancery between the vendor and purchaser in relation to a portion of the purchase-money after the sale and conveyance of the land, which by the terms of the contract was to be retained by the purchaser to be applied to the extinguishment of all liens and incumbrances then existing against the land, and the same with his judgment bond for the balance of the purchase-money was handed by the purchaser to the agent to be delivered to the vendor with directions not to pay him any part of the money until all the said liens and incumbrances were satisfied, the vendor alleges in his bill that the agent was the agent of the purchaser, and not his agent in regard to that matter, but it is expressly and unequivocally denied, and on the contrary, is alleged in the answer of the purchaser that he was the

Small *v.* Collins.

agent of the vendor in it, as the answer was responsive to the bill, proof to countervail it must be that of two witnesses, or of one with corroborative facts or circumstances. The purchaser produced no witness to sustain the allegation in his answer, but the vendor produced at least two to sustain the allegation in his bill, the agent and another, and it was held sufficient to prove that he was the agent of the purchaser for the payment of the part of the purchase-money retained and placed in his hands to whomsoever it was respectively due.

There is no law in a court of equity allowing a set-off of an equitable debt against a legal one, unless special circumstances exist of which a court of equity only can take notice. In such a case, our statute of set-off allows no deduction of the one from the other, and a court of equity follows the law in refusing it, unless there be some mutual understanding between the parties with respect to such a deduction ; and it seems to make no difference that the party seeking the deduction can show the insolvency of his creditor; he will lose the debt assigned to him unless the set-off of it be allowed him.

THESE cases came up on appeal from decrees of the chancellor sitting in Sussex County. Each of the parties had filed a bill of complaint against the other on a sale of land by Collins to Small on a special contract made by another person with Collins for Small as the purchaser who resided in Philadelphia, and the principal question of fact involved was, of which of the parties, the vendor or the purchaser, was he the agent in negotiating the contract of sale. The cases were heard together in the court below and decided by the chancellor at the same time, and decreed in favor of Collins in each of the cases from which both of the parties appealed, and the cases were in like manner heard and decided together in this court. The facts and circumstances involved in them are fully disclosed in the opinion of the court.

*Comegys*, C. J., delivered the opinion of the court. The first of these cases represents an appeal from the Court of Chancery of Sussex, in the matter of a decree made by the chancellor in a suit of the respondent here, Small against Collins, rendered on the 20th day of September, 1878; and the second and third represent appeals by both sides from a decree made by the chancellor in a suit by Collins against Small, rendered on the same

Small *v.* Collins.

day. There were cross bills between the parties and a decree in the first case from which the defendant below (Collins) appealed, and in the other case, from which both complainant and defendant appealed.

These suits below grew out of a contract of sale of the lands of Collins to Small, and have been pending for a long time. The argument of them was made at the last term, but there was no time then to decide them.

It appears that sometime in the year 1865, an agreement was entered into between Winlock H. Collins through his agent for that purpose—Albert T. Johnston and Abel S. Small, then and for four or five years afterwards a citizen of Pennsylvania, for the conveyance to the latter, of a tract of land owned by Collins, and situated in Cedar Creek hundred in Sussex County, near the village of Lincoln. In the bill of Collins it is alleged, that this contract was in writing, but this is denied by Small, and no instrument of any kind is produced, or proved, except that Johnston, who was examined as a witness for Collins, states that there must have been one, as his book shows that a sale was made, and written contracts followed such entries—or language of that purport. He was a person engaged at Milford in Kent County, in the business of buying and selling lands—what is called a land-agent. But in this case it is immaterial whether there was a written agreement or not. By the terms of the contract Small was to give seven thousand, two hundred and five dollars for the tract, two thousand and five hundred dollars of which was to be paid in cash, and the balance, or sum of four thousand, seven hundred and five dollars, was to be paid in three equal annual instalments of fifteen hundred and sixty-eight dollars and thirty-three and a third cents each, the first on the sixteenth day of December, 1866, and the others in their order, with the interest unpaid on the whole at the time of the payment of each instalment, to be secured by Small's judgment bond; and upon the above payment of cash, and the execution and delivery of the bond, Collins and his wife, Harriet, were to execute acknowledge and deliver to Small a deed in fee simple for the said premises, clear of all incumbrances. About these facts there

Small v. Collins.

is no dispute, nor is there any that Small placed in the hands of Johnston the said sum of twenty-five hundred dollars, in compliance in part with the contract, and his judgment bond for the balance aforesaid of the purchase-money and that Johnston gave him a receipt for the said bond. Such a paper is proved, and bears date the 22d day of that month. No receipt, however, is shown to have been given for the cash, nor does Small allege in his bill or answer that he received any. The deed to Small from Collins and wife was not delivered until on or about the         day of February, 1866. It is alleged by Collins in his bill, and in his answer to Small's bill, that the sum of twenty-five hundred dollars, the cash payment in the purchase was to be applied to the extinguishment of certain judgments against him on the records of the Superior Court of Sussex, a list of which he presents; to the payment to his wife of one thousand dollars to satisfy her for joining in the deed to Small; and to himself from time to time, as he should need them, of sums of money, until the residue was exhausted; and that the land-agent and witness, Johnston, was the agent of Small for the disbursement of said money, or sum of twenty-five hundred dollars. All this is flatly and explicitly denied by Small who avers that he paid the said sum of twenty-five hundred dollars over to Johnston as the agent, as he alleges, of Collins; that he had nothing to do with the payment of the liens against the land, nor the payment of money to the wife of Collins, or to himself; and that the payment by him to Johnston, and delivery to him of the bond for the balance of the purchase-money, deducting the said payment, was a compliance by him of his part of the contract of sale. The list of judgments appended by Collins to his bill, and which he alleges were the liens against his land to be discharged out of the cash payment of twenty-five hundred dollars, comprises the following. It is admitted by Small in his answer to be a correct list:

1. C. S. & Bethuel Watson    Amount, $163.05.
              v.              Interest from 7th April, 1848.
    Winlock H. Collins.       Costs, $4.58.

Small v. Collins.

| | |
|---|---|
| 2. Same Plff.<br>v.<br>Same Def't. | Amount, $165.58.<br>Int. from 10th April, 1855.<br>Costs, $4.58. |
| 3. Aaron Marshall<br>v.<br>Same Def't. | Amount, $100.<br>Int. from 24th February, 1842.<br>Costs. |
| 4. Isaac Betts<br>v.<br>Same Def't. | Amount, $36.17.<br>Int. from October 1, 1851.<br>Costs. |
| 5. John Ponder<br>v.<br>Same Def't. | Amount, $87.82.<br>Int. from 27th July, 1861.<br>Costs, $4.58. |
| 6. James M. Cain, assignee<br>v.<br>Same Def't. | Amount due, $123.68.<br>(as alleged by Collins).<br>Int. |
| 7. Curry & Davis<br>v.<br>Same Def't. | Amount, $25.27½.<br>Int. from 22d , 1848. |
| 8. Same Plff.<br>v.<br>Same Def't. | Amount, $57.72.<br>Int. from April 5, 1851. |

On the 8th of April, 1871, the amount due on the two last stated judgments was found by referees, to be the sum of eighty-six dollars and ten cents including costs.

The chief question to be determined, before proceeding any further, is this—as whose agent did Johnston hold the cash payment of twenty-five hundred dollars, placed in his hands by Small? If he held it as agent for Collins, then the decree of the chancellor made upon Collins' bill must be reversed, for Small had nothing to do with the disposal of the cash payment, after it passed out of his hands. But if, on the contrary, he held it as the agent of Small, to be applied for his protection, to the payment of the judgments aforesaid which were liens upon Collins, so far as should be necessary to liquidate them, and the

Small *v.* Collins.

balance to be paid over to Collins, then the decree is not to be reversed.

Johnston's agency for Small is charged in Collins' bill; but as before stated, Small, in his answer to it, expressly and unequivocally denies it. Proof, to countervail an answer, responsive to a bill, must be that of two witnesses, or of one, with corroborative facts or circumstances. Has such proof been made by Collins? Small has offered none himself, relying, no doubt, on his answer and the expected failure of Collins to overthrow it. There are two witnesses produced by Collins, whose depositions mainly are relied upon to prove the agency: one is Johnston, the land-agent, who negotiated the sale between the parties, and Lemuel Draper is the other.

In answer to the third interrogatory of Collins, Johnston says: " I acted for Abel S. Small in obtaining the said deed from W. H. Collins and wife and in paying out the said sum of two thousand, five hundred dollars; that two thousand dollars, part of said two thousand, five hundred dollars, had been in my hands, and had been handed to me by A. S. Small, for several months, to be paid so soon as Collins should deliver the deed." In answer to the fifth interrogatory, he says (answering with respect to the list of judgments alleged to have been made known to Small): " I do not remember of exhibiting the list of such judgments to said Abel S. Small, but said A. S. Small knew, from my information to him, that there were judgments against said Collins, and it was for that reason he refused to pay over the money to Collins until the title to the land was made good." Further on he repeats: "Small was told by me that there were a great many judgments against the land, and that was his reason for putting the two thousand, five hundred dollars into my hands to have it paid out in such a way as to clear the property from these judgments." Again, in answer to the ninth interrogatory, he says (referring to the order of Collins and Draper on him, proved as an exhibit of the former): "I did indorse the said paper writing on the face with the words 'Accepted, A. T. Johnston.' At the time, I held in my hands, of the money deposited by Abel S. Small, the sum of four hundred and fourteen

Small *v*. Collins.

dollars and eighty-three cents, which I agreed to accept and pay orders for." And (looking at the paper marked J., and proved as an exhibit for Collins) he says: "At the date mentioned (the paper being the receipt and engagement of Draper to Johnston, with respect to the sum of four hundred and fourteen dollars and eighty-three cents, the estimated amount of the liens against Collins after deducting the Judgments 1 and 2 aforesaid, which had been previously paid off by Johnston out of the said sum of twenty-five hundred dollars, and its date, the 26th of July, 1866), I had in my hands, of money deposited by Abel S. Small, the sum of four hundred and fourteen dollars and eighty-three cents, and I gave Lemuel Draper a note for that amount and took a receipt from him, and said Draper gave orders on me, and I paid some of them, but I cannot say how much I paid, as I turned over all such orders, and the balance of the four hundred and fourteen dollars and eighty-three cents to Abel S. Small." The cross-examination of this witness elicits no fact or expression in contravention of what he said in his examination-in-chief.

Dr. William Marshall, a witness for Collins, and who, as executor of his father, represented Judgment No. 3, above mentioned, says, speaking of a business transaction he had as such with Small and Johnston in regard to that judgment: "I understood and supposed that Johnston was an agent of said Small."

Lemuel Draper, the aforesaid witness for Collins, states, in his answer to the third interrogatory in chief (upon the point of the agency): "I know, from information from said Abel S. Small, and from said A. T. Johnston, and from a business transaction with them both, that said Albert T. Johnston was the agent of said Abel S. Small in the payment of money arising from the sale of said lands of Winlock H. Collins to Small, in this, that said Johnston paid to me for Harriet O. Collins, wife of said Winlock H. Collins, the sum of one thousand dollars, at and by the direction of said Abel S. Small, and as his agent." This is very explicit language. In answer to the second cross-interrogatory of Small, he states what the business transaction was, or rather makes such remark as, taken in connection with the interrogatory-in-chief, shows what it was. It was this:

Small *v*. Collins.

"The witness, who was the brother of Collins' wife, held a power of attorney from his brother-in-law, Collins, dated the 17th of November, 1865, which empowered him to go to the city of Philadelphia and receive the purchase-money and papers from Abel S. Small for my use for the lands and premises sold him by me as per written agreement and deed of conveyance therefor, dated June 17, A.D., 1865, and when said payments are made, according to said agreement, to deliver said deed over to said Abel S. Small; also to pay amount of said purchase-money unto my wife, Harriet O. Collins, upon her executing said deed, the sum of one thousand dollars." [This paper is one of the proved exhibits on the part of Collins.] He proceeds to say, in answer to said cross-interrogatory, "The fact named of such agency was that upon my visiting said Abel S. Small under the said power of attorney hereinbefore referred to in relation to the settlement thereof, the said Abel S. Small directed me verbally to the said A. T. Johnston to make that settlement for him with me, and I then, after such direction, did make settlement with said Johnston, and received the money under the same." This transaction is confirmatory of the witness' declaration that he knew Johnston was the agent of Small for the disbursement of the cash payment of twenty-five hundred dollars.

Looking at these facts, disclosed by the testimony of Johnston and Draper, and not taking into account the testimony of Marshall (which, however, is entitled to some weight), nor referring to other evidence in the cause tending to prove the fact of agency, we feel we must hold Johnston was the agent of Small for the payment of the said sum of twenty-five hundred dollars.

It seems to be a fact not in controversy between the parties, that at the date of the receipt and engagement from Draper to Johnston, the 26th of February, 1866, as before stated, the sum total of the liens against the lands sold by Collins to Small was, as estimated, the sum aforesaid of four hundred and fourteen dollars and eighty-three cents. Now, Judgments Nos. 1 and 2, Watson & Watson *v*. Winlock H. Collins, on a sum sufficient to satisfy the same, had been paid by Johnston out of the cash payment of twenty-five hundred dollars, and therefore formed

Small *v.* Collins.

no part of the estimated amount.  Johnston says he paid 'out some money on the order of Draper, but the balance he paid over to Small.  It would appear, too, that the residue of the said cash payment, after deducting the said sum of four hundred and fourteen dollars and eighty-three cents, had, before the date of the receipt and engagement of Draper, or by that time, been paid out by Johnston to Collins, his wife, or otherwise.  In this view the question seems brought down to this: How much of the said sum of four hundred and fourteen dollars and eighty-three cents did Johnston disburse out of that sum, or, rather, how much should Small been allowed as a credit to that sum on account of payments by Johnston to the remaining liens? Without making any calculation, we adopt the action of the chancellor with respect to that subject, which was taken, as we are informed by him, from a statement presented to him at the hearing below by the counsel for both parties, and find that he was allowed credits towards the said sum of four hundred and fourteen dollars and eighty-three cents, which reduced it to a balance of nineteen dollars and eighty-nine cents.  This, then, is the true balance due Collins from Small, with respect to the said cash payment of twenty-five hundred dollars, and such balance is entitled to draw interest from the 22d of December, 1865, the date of the deed from Collins and wife to Small.  The decree of the chancellor, therefore, upon the bill of Collins against Small is affirmed.

In the case of the bill of Small against Collins there is no difficulty whatever in arriving at a satisfactory conclusion.  The Davis, Betts, Ponder and Cain judgments, not being credits to the judgment entered by Collins on the bond of Small for the aforesaid balance of purchase-money, the sum of four thousand seven hundred and five dollars, the chancellor found the balance due on that judgment, after deducting all the payments by Small which were applicable to it, including the judgment of Whittington Williams to be the sum of six hundred and thirty-nine dollars and ninety cents, with interest from the 7th day of April, 1871; and we are satisfied that such finding, and his decree made in pursuance thereof, are correct.

19

Small *v.* Collins.

It appears that some time before the bill in this case was filed, but long after the conveyance by Collins and wife to Small, a judgment had been recovered in the Superior Court of Sussex against Collins, at the suit of De Haven & Co., the amount of which was the sum of three hundred and twenty dollars and ninety-two cents, together with nine dollars and ninety-eight cents costs, and that it bore interest from the 16th day of April, 1870. This judgment Small became entitled to by assignment, and he claimed that the same should be set-off by the chancellor against the said judgment of four thousand, seven hundred and five dollars. This the chancellor refused to do, and we think very properly. There is no law in a court of equity allowing the set-off of an equitable debt against a legal one, unless special circumstances exist of which only a court of equity can take notice. No such circumstances exist in this case, which is one where a debtor takes a transfer of a judgment recovered by a creditor against the party to whom he is indebted by judgment. Our statutes of set-off allow no deduction of one, in such a case, from the other; and a court of equity follows the law in refusing it, unless there be some mutual credit between the parties—that is, understanding between them with respect to such deduction—and it seems to make no difference that the party seeking the deduction can show the insolvency of his creditor, and that he shall lose his assigned debt unless the set-off be allowed. The learning upon this subject can be found in the second volume of *Story's Equity*, chap. xxxviii., Title " Set-off." There is no pretence here of any understanding of set-off of the De Haven judgment between Small and Collins.

The decree of the chancellor in this case is also affirmed.

*Moore* and *Cullin*, Attorneys for Small.
*Layton*, Attorney for Collins.